Mary L. ROBKE, Plaintiff-Appellee,

v.

J. WEINGARTEN, INC., Defendant-
Appellant.

No. 71–1087.

United States Court of Appeals,
Eighth Circuit.

Feb. 3, 1972.

George Pike, Jr., Little Rock, Ark., for defendant-appellant.

Henry Woods, E. DeMatt Henderson, Catlett & Henderson, McMath, Leatherman & Woods, Little Rock, Ark., for plaintiff-appellee.

Before JOHNSEN, GIBSON AND LAY, Circuit Judges.

PER CURIAM.

The appeal is by the defendant from a judgment in a diversity suit for personal injuries sustained by the plaintiff in the parking area constituting part of the facilities of a shopping center in Little Rock, Arkansas. We affirm the judgment.

The business establishments in the shopping center were lessees of the owner of the complex. The parking area was for the use of the lessees and their customers. The defendant was the operator of a self-serve grocery store which as part of its business system provided wire-basket carts for its customers to take purchases to their cars, with the right to abandon the carts anywhere in the parking area.

Plaintiff had driven into the parking area to eat dinner at a restaurant located next to the grocery store. She parked in one of the rows of diagonal spaces along which a six-inch curb extended. She claimed that when she returned to get her car she steppped safely off the curb but as she turned to proceed toward the door of the car, she suddenly bumped into the front end of a grocery cart which had been pushed or left between the car and that in the next stall. She said that this caused her to fall forward across the front end of the cart and to be tumbled over the top of it on to the ground. She admittedly sustained severe and permanent injuries.

The accident occurred in a late September evening, with the conditions existing at the time being described by her as "dusky dark".

The maintenance of the parking area was under the leases an obligation of the owner of the complex. This, under the lease provisions, included, among other things, a responsibility to "maintain the surface * * * in a smooth and traversible condition at all times". A part of the annual rent of the tenants represented a "parking area maintenance charge". In the case of defendant's business, which was the largest establishment in the shopping center, the maintenance charge was $2,000 a year. By a modification agreement made between defendant and the lessor, the defendant assumed the obligations of the lessor as to maintaining the general parking area, in consideration for which it was released from payment of its $2,000 annual charge.

The contentions made for reversal are (1) that the court erred in refusing to direct a verdict for the defendant for lack of any negligence on its part, and (2) that the court also erred in not admitting into evidence a written statement claimed to have been given by plaintiff to one of defendant's employees.

As to the first contention, the right accorded by the defendant to its customers to abandon their shopping carts anywhere in the parking area made such abandonments the acts of the defendant. The question of negligence as to the defendant thus turned on whether the presence of the cart, its locational position, the existing conditions, and the circumstances involved in plaintiff's bumping into and falling over it could reasonably be regarded as giving rise to such a parking-area hazard as to represent a lack of proper or ordinary care for plaintiff's safety. In defendant's responsibility for the presence of the cart from the time it was left there, the question of its negligence would not, as in situations where a store owner does not have a responsibility for an ob-

ject having come to be present, turn on whether in such hazard as the cart presented, it had been there for such a period of time as to charge the defendant with knowledge thereof and on that basis to have imposed a duty of ordinary care upon the defendant to have such hazard as it involved removed. Further, in relation to the question of lack of proper care, there existed the additional factor in the situation of defendant having expressly obligated itself to keep the parking area "in traversible condition at all times", not merely to the lessor as obligee but also to the invitee users of the area as intended beneficiaries.

We think that reasonable men could properly regard the presence of the cart, the position in which it was located, the time and the circumstances involved in plaintiff's approach to her car, and her bumping into and fall over the cart, as presenting such a situation of hazard to plaintiff's safety as to amount to a lack of due care or negligence in not having prevented the accident. We have found no decisions by the courts of Arkansas that leave us with any doubt that the conditions and circumstances testified to would be capable of giving rise to a cause of action under Arkansas law. Whether any negligence on plaintiff's own part was involved as a contributory cause in relation to the Arkansas comparative negligence rule was duly submitted to the jury and that question calls for no consideration here.

 As to defendant's second contention, we find no prejudicial error in the court's refusal to admit the written statement of which complaint is made. The instrument consisted of an accident-report form used by the defendant, which one of its checkers testified to having filled out from answers made by the plaintiff to questions asked her by the checker. Among the statements in the report was the following: "There was a basket in front of curb and person moved basket and tripped over curb. Didn't see curb". The checker had interviewed the plaintiff after she had arrived at the hospital and while she was lying in the emergency care room prior to any sedation or treatment having been given her.

This and the other information in the report were written by the checker in third person form and not in direct quotation. Plaintiff's cousin, who had not seen the accident but was present at the hospital, signed the report. The checker testified that plaintiff had requested the cousin to sign for her. At a hearing preliminarily held out of the presence of the jury, the court inquired of the checker why the plaintiff herself had not signed the statement, to which the checker replied: "She said she just couldn't. She said she was too nervous. As I said, she was in quite a lot of pain". Plaintiff, in addition to bruises and nervous shock had sustained a proximal tibia fracture extending into the knee joint which ultimately left her with a stiff knee and a limb shortening.

The court ruled that it would not admit the written statement as such, but that it would allow the checker to testify as to what the plaintiff had told her and to use the statement, if she desired, to refresh her memory. The checker did refer to the instrument in her testimony on the stand in relating what she claimed the plaintiff had told her. Plaintiff's testimony as to how the accident had occurred has previously been detailed. She denied having stumbled over the curb itself. She further stated positively that during the time she was in the emergency room she was in such pain that "I couldn't talk to anyone" and said she had no recollection of ever having had a conversation with the checker. The cousin was not called as a corroborating witness by either plaintiff or the defendant.

While the court could perhaps have properly admitted the statement and left it to the jury to resolve what force, if any, should, in plaintiff's condition of pain and shock but not irrationality, be accorded to it, we are satisfied that no prejudice could in fact have resulted to the defendant from the alternative man-

ner in which the court dealt with the situation. The testimony of the checker was before the jury that the statements had been made by the plaintiff; that they had occurred as a result of questions asked by the checker of the plaintiff in the emergency room of the hospital; that the checker had written down at the time in third-person form what the plaintiff had told her; that what she had thus written down and what the plaintiff had said was that there was a cart in front of the curb which plaintiff moved; and that she had then tripped over the curb, whose edge she did not see.

The jury thus had the opportunity to judge between plaintiff's testimony as to how the accident had occurred and the testimony of the checker as to what she said the plaintiff had told her at the time. The fact was made known to the jury that the instrument had been signed by the plaintiff's cousin, so that any corroborative force that could inhere in that fact was able to be taken into account by the jury in its resolution of what had the more probably occurred. In this situation, we believe that the defendant had an adequate and fair opportunity to argue to the jury and to attempt to persuade it that the accident had not occurred as plaintiff testified on the stand. Realistically, in the jury's apparent belief that the accident had occurred as plaintiff testified, we cannot believe that, in plaintiff's condition of nervous shock and pain and on the circumstances which the checker admitted had existed in relation to her interrogation, the jury would have been any less willing to accept plaintiff's testimony if the statement had been admitted.

In any event, whether the statement itself might have been entitled to be formally admitted, the alternative action of the court was not in our judgment of such possibly affective significance as, under Rule 61 Fed.R.Civ.P., to be "inconsistent with substantial justice" or to "affect the substantial rights of the parties".

Affirmed.